**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHIRLEY MAY INTERNATIONAL US INC., *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 2:21-cv-19951 (BRM) (MAH) |
| MARINA GROUP LLC., *et al.*, | **OPINION** |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiffs Shirley May International US Inc. ("SMIUS") and Shirley May International FZE's ("SMIFZE") (collectively, "Plaintiffs") Motion for Preliminary Injunction, filed on June 8, 2022 (ECF No. 14) and Defendants Marina Group LLC ("Marina Group") and Dikheel Aldikheel's ("Aldikheel") (collectively, "Defendants") Cross-Motion for Judgment on the Pleadings, filed on June 21, 2022 (ECF No. 15). Having reviewed the submissions filed in connection with the motions, and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b)[1], for the reasons set forth below, Plaintiffs' Motion for Preliminary Injunction is **DENIED**, and Defendants' Motion for Judgment on the Pleadings is **GRANTED** in part and **DENIED** in part.[2]

---

[1] Oral argument was initially scheduled for August 22, 2022. (ECF No. 21.) Argument was thereafter postponed and rescheduled several times over the following weeks due to various conflicts with both counsel and the Court. (ECF Nos. 21, 23, 30, and 31.) The Court now declines to hold oral argument on the pending motions.

[2] The Court is filing a companion opinion in the matter entitled *Marina Group, LLC v. Shirley May International US Inc., et al.*, Civ. A. No. 21-18733.

## I.  BACKGROUND

This case arises out of Defendants' alleged infringement of the SWISSARABIAN mark. (Am. Compl. (ECF No. 7) at ¶ 1.)

Plaintiffs are manufacturers and distributors of perfume and scented products (*id.* at ¶¶ 2-3) and the owners of the U.S. Trademark for the mark, SWISSARABIAN, for perfume, eau de toilette, eau de parfum, deodorant body sprays, shower gel, shaving cream, shaving foam, shaving gel, after-shave lotions and preparations, shaving soap, body soap, body moisturizers and body splash (*id.* at ¶ 5). Marina Group was a distributor of Shirley May's products under the SWISSARABIAN brand from or around 2017 until the relationship was terminated in August 2021. (*Id.* at ¶¶ 3-4.) Since 2017, Defendants operated a website, Amazon storefront, and various social media websites utilizing the SWISSARABIAN mark. (*Id.* at ¶ 6.) Defendants used the website, associated with the SWISSARABIAN mark, to sell other goods, including non-perfume products. (*Id.* at ¶ 8.) On numerous occasions, Plaintiffs cautioned Defendants that their use of the SWISSARABIAN websites and accounts was conditioned on Plaintiffs' access to those websites and accounts. (*Id.* at ¶ 7.) On or about July 5, 2021, after Defendants continued to fail to provide access, Plaintiffs demanded Defendants cease use of the website and accounts. (*Id.*) Thereafter, as of August 2021, the parties' distributorship was terminated. (*Id.* at ¶ 9.)

Plaintiffs allege that after they ceased doing business with Defendants, Defendants retaliated by threatening Plaintiffs and interfering with their business by harassing and threatening their distributors, including the third-party distributor, Intense Oud. (*Id.* at ¶¶ 10, 13.) Defendants have since filed multiple takedown requests with Amazon against Plaintiffs' lawful distributors, resulting in the distributors' lawful product listings being removed from the website. (*Id.* at ¶ 13.) Defendants have also filed multiple trademark applications for several marks, owned or

confusingly similar to those owned by Plaintiffs, with the alleged intent to deceive. (*Id.* at ¶ 16.) In support of the applications, Plaintiffs allege Marina Group's principal, Aldikheel, made knowingly false statements in bad faith about the status of the proposed marks. (*Id.* at ¶¶ 18-21.)

Plaintiffs' initial Complaint was filed on November 12, 2021. (Compl. (ECF No. 1).) On December 15, 2021, the action was consolidated with a previously-filed action, *Marina Group LLC v. Shirley May International US Inc., et al.*, Civ. A. No. 21-18733, and the Court ordered a stay of thirty days while the parties attempted to negotiate a global resolution. (ECF No. 5.) After the parties failed to resolve the matter, the Court granted additional time for the filing of amended pleadings in each of the respective actions. (*Id.*) On March 21, 2022, Plaintiffs filed their First Amended Complaint. (First Am. Compl. (ECF No. 7).)

Plaintiffs' Amended Complaint alleged Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114(1) (Count I); Unfair Competition under the Lanham Act, 15 U.S.C. § 1125(a) (Count II); Federal Common Law Trademark Infringement (Count III); Federal Common Law Unfair Competition (Count IV); New Jersey State Common Law Trademark Infringement (Count V); New Jersey State Unfair Competition under N.J. Stat. § 56:4-1 (Count VI); Tortious Interference with Contract (Count VII); Tortious Interference with Prospective Economic Advantage (Count VIII); and Unjust Enrichment (Count IX). (*Id.*) Accordingly, Plaintiffs requested the Court grant judgment in their favor; preliminarily and permanently enjoin and refrain Defendants from any use of the SWISSARABIAN mark or any designation of origin confusingly similar thereto; order Defendants to cease use of the website and Amazon storefront; order Defendants to provide access to and transfer ownership of the website, social media pages, and Amazon storefront to Plaintiffs; and order Defendants to account for and pay Plaintiffs' damages, including treble and punitive damages, and other fees and costs. (*Id.*)

Defendants filed an Answer to the Amended Complaint on April 26, 2022. (ECF No. 10.) On April 29, 2022, Plaintiffs filed a Motion for Preliminary Injunction. (ECF No. 11.) The Honorable Michael A. Hammer, U.S.M.J. terminated the motion, with leave to refile, pending a June 1, 2022 settlement conference, wherein the parties were, again, encouraged to reach a global resolution. (ECF No. 13.) After the parties failed to settle, on June 8, 2022, Plaintiffs refiled their Motion for Preliminary Injunction. (ECF No. 14.) Defendants filed an Opposition and Cross-Motion for Judgment on the Pleadings on June 21, 2022. (ECF No. 15.) Plaintiffs filed a Reply and Opposition to the Cross-Motion on July 11, 2022. (ECF No. 18.)

## II. PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### A. Legal Standard

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). To obtain a preliminary injunction, the moving party must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 209 (quoting *Winter v. Nat. Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Lane v. New Jersey*, 725 F. App'x 185, 187 (3d Cir. 2018). The movant must first establish the two "most critical" factors:

> it must demonstrate that it can win on the merits . . . and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief. If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

### B. Decision

Plaintiffs request a preliminary injunction against Defendants, enjoining Defendants from using the name "SWISSARABIAN," or any other marks owned by Plaintiffs, and from disparaging SWISSARABIAN products or soliciting or contacting any of Plaintiffs' distributors or clients. (ECF No. 14-2 at 3.) Plaintiffs further request the Court order Defendants to provide Plaintiffs access and control of the website, Amazon storefront, and social media pages; to abandon all trademark applications on brands used by Plaintiffs; and to not file any additional applications. (*Id.*) Plaintiffs bear the burden of establishing the "threshold" for the two most critical factors, a likelihood of success on the merits of their claim and the probability of irreparable harm should Defendants' actions continue. *Reilly*, 858 F.3d at 176; *see also Nken v. Holder*, 556 U.S. 418, 434 (2009) ("The first two factors of the traditional [injunction] standard are the most critical."). The Court finds Plaintiffs have failed to establish both factors, and the matter can be adjudicated in due course.

#### 1. Likelihood of Success on the Merits

Plaintiffs claim they establish a likelihood of success on the merits because: (1) their trademarks are valid and legally protectable; (2) they own each of the marks at issue; and (3) there is a strong likelihood of confusion created by Defendants' infringement of the marks. (ECF No. 14-1 at 5.) Defendants counter that Plaintiffs fail to satisfy any of the necessary elements, including a likelihood of success on the merits. (ECF No. 15-1 at 19.) Defendants further challenge the sufficiency of Pankaj Attrey's affidavit filed in support of Plaintiffs' motion and argue Plaintiffs' delay in seeking a preliminary injunction precludes entering an injunction in Plaintiffs' favor. (*Id.* at 21-24.) The Court finds Plaintiffs fail to establish a likelihood of success on the merits, and therefore, their request for a preliminary injunction is denied.

A party moving for a preliminary injunction has the burden of proving its likelihood of success on the merits of the case.[3] *Ferring Pharms., Inc.*, 765 F.3d at 210 (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)). To establish a likelihood of success on the merits in a trademark infringement or false designation of origin action, Plaintiffs must establish that Defendants' use of the trademark to identify its goods or services is likely to create confusion concerning the origin of those goods or services. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000); *Food Sciences Corp. v. Nagler*, Civ. A. No. 09-1798, 2010 WL 1186203, at *6 (D.N.J. Mar. 22, 2010); *see also Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 n.6 (D.N.J. 2015) ("Courts in the Third Circuit consider claims for trademark infringement and for false designation of origin under an identical standard.") Courts analyze the likelihood of confusion prong by consulting the ten-part but non-exhaustive "*Lapp*" factors test, which considers:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark;
>
> (2) the strength of the owner's mark;
>
> (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
>
> (4) the length of time the defendant has used the mark without evidence of actual confusion arising;
>
> (5) the intent of the defendant in adopting the mark;
>
> (6) the evidence of actual confusion;
>
> (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media;

---

[3] Notably, the standard Plaintiffs must meet to establish a likelihood of success on the merits to warrant the imposition of a preliminary injunction is higher than the burden placed upon Plaintiffs to overcome Defendants' 12(c) Motion.

>   (8) the extent to which the targets of the parties' sales efforts are the same;
>
>   (9) the relationship of the goods in the minds of consumers because of the similarity of function;
>
>   (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.

*A & H Sportswear*, 237 F.3d at 211–12 (quoting *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983)). "None of these factors is determinative in the likelihood of confusion analysis and each factor must be weighed and balanced one against the other." *Kos Pharms., Inc. v. Andryx Corp.*, 369 F.3d 700, 709 (3d Cir. 2004) (quoting *Checkpoint Sys., Inc. v. Check Point Software Tech., Inc.*, 269 F.3d 270, 280 (3d Cir. 2001)).

Plaintiffs are unable to establish a likelihood of confusion as to the origin of their products[4], and therefore, fail to establish a likelihood of success on the merits. It is unclear at this time whether Defendants' conduct is infringement or is merely the resale and distribution of genuine SWISSARABIAN products, pursuant to their distributorship agreement. Without more, such an arrangement does not establish confusion over the origin of the product, and therefore, cannot constitute a claim for trademark infringement. *See Food Sciences Corp.*, 2010 WL 1186203 at *7; *see also Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 301 n.4 (3d Cir. 1998) ("[A] trademark owner's authorized initial sale of its product into the stream of commerce extinguishes the trademark owner's rights to maintain control over who buys, sells, and uses the product in its authorized form."). Plaintiffs assert, "In the present matter, Defendants' use of the

---

[4] Because Plaintiffs fail to establish a likelihood of success on the merits as to consumer confusion, this Court need not address Plaintiffs' arguments as to the validity and ownership of the trademarks.

SWISSARABIAN mark is not just 'confusingly similar,' but indisputably identical to Plaintiffs' SWISSARABIAN mark." (ECF No. 14-1 at 9.) The Court finds Plaintiffs fail to demonstrate a likelihood of confusion as to the origin of the sold goods where Plaintiffs' allegations are limited to Defendants' mere resale of SWISSARABIAN products.

This alone, however, does not mean Defendants are free from trademark liability. *See Food Sciences Corp.*, 2010 WL 1186203 at *7 ("There are other kinds of confusion against which the statutes guard, and there are several varieties of cases permitting trademark claims even though the product sold is otherwise genuine."). At this stage, Plaintiffs' allegations fail to justify injunctive relief as to both the SWISSARABIAN and common law marks. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) ("An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course.").

### 2. Irreparable Harm

Plaintiffs similarly fail to establish irreparable injury as a result of any alleged infringement. Plaintiffs blanketly claim Defendants' infringing and fraudulent conduct will result in Plaintiffs' loss of trade, goodwill, control and reputation. (ECF No. 14-1 at 13.) However, for the same reasons Plaintiffs fail to establish a likelihood of success on the merits in establishing Defendants' infringement, they fail to establish irreparable injury. (*See* ECF No. 14-1 at 13 (arguing that a showing of trademark infringement, or likelihood of confusion, amounts to irreparable injury).) As discussed, Plaintiffs argue Defendants' alleged infringing conduct is especially harmful because they are selling identical SWISSARABIAN products using the same SWISSARABIAN brand or the same common law trademarks. However, Defendants' use of Plaintiffs' marks, operation of their website, and application for marks regarding products Defendants were already

authorized to sell pursuant to a distributorship agreement, does not support a finding of irreparable harm.

### 3. Procedural Arguments

Because the Court denies Plaintiffs' Motion for Preliminary Injunction on the merits, the Court need not address Defendants' technical arguments in opposition regarding the sufficiency of Panjak Attrey's Declaration and the alleged delay in Plaintiffs' filing of the motion. Accordingly, Points II and IV of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction are moot.

### III. DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

#### A. Legal Standard

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pursuant to Rule 12(c), the movant for judgment on the pleadings must establish: (1) that no material issue of fact remains to be resolved; and (2) the entitlement to judgment as a matter of law. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988)).

Even though a motion for judgment on the pleadings is appropriate after the pleadings have been closed, such a motion is reviewed under the same standards that apply to a motion to dismiss made under Rule 12(b)(6). *See Szczurek v. Pro. Mgmt. Inc.*, 627 F. App'x 57, 60 (3d Cir. 2015) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)); *see also Muhammad v. Sarkos*, Civ. A. No. 12-7206, 2014 WL 4418059, at *1 (D.N.J. Sept. 8, 2014) ("Where a defendant's motion is one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), it is treated under the same standards as a Rule 12(b)(6) motion where it alleges

9

that a plaintiff has failed to state a claim.") (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); *Gebhart v. Steffen*, 574 F. App'x 156, 157 (3d Cir. 2014)). "The difference between a motion to dismiss pursuant to Rule 12(b)(6) and Rule 12(c) is only a matter of timing and the Court applies the same standard to a Rule 12(c) motion as it would to a Rule 12(b)(6) motion." *Newton v. Greenwich Twp.*, Civ. A. No. 12-238, 2012 WL 3715947, at *2 (D.N.J. Aug. 27, 2012) (citing *Turbe*, 938 F.2d at 428).

Therefore, for the purposes of this Motion for Judgment on the Pleadings, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *see also Rosenau*, 539 F.3d at 221. The Court also considers any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

**B. Decision**

Defendants argue Counts II through VI should be dismissed because Plaintiffs failed to allege sufficient facts demonstrating Plaintiffs own valid common law trademarks; Counts I and II should be dismissed as to both the SWISSARABIAN mark and common law marks; Counts III and IV should be dismissed because federal common law trademark infringement and unfair competition causes of action do not exist; Counts V and VI should be dismissed because Plaintiffs' state law trademark infringement and unfair competition claims fail for the same reasons their Lanham Act claims fail; Plaintiffs lack standing to assert claims pertaining to the Intense Oud trademark; Plaintiffs fail to state a cause of action for tortious interference with contract; Plaintiffs do not plead a cause of action for tortious interference with prospective economic advantage; and the Court should deny leave to amend. (ECF No. 15-1.) Plaintiffs respond they have asserted sufficient facts to establish the claims set forth in their Amended Complaint. (ECF No. 18.)

For the reasons set forth herein, the Court agrees with Plaintiffs and denies Defendants' Motion for Judgment on the Pleadings as to Counts I, II, V, VI, VII, and VIII. However, the Court grants Defendants' Motion in part and dismisses Counts III and IV of Plaintiff's Amended Complaint with prejudice.

### 1. Trademark Infringement and Unfair Competition (Counts I – VI)

#### a. The Lanham Act (Counts I and II)

##### i. *Validity and Ownership*

Defendants contend Plaintiffs have failed to plead sufficient facts demonstrating their ownership of the common law marks, and the geographical region in which each mark is entitled to protection, as required by law. (ECF No. 15-1 at 4-5.) Plaintiffs disagree, contending they sufficiently establish the common law marks are owned by Plaintiffs and are legally protectable. (ECF No. 18 at 15-17.) The Court finds Plaintiffs have pleaded sufficient facts regarding the marks' validity and ownership to survive Defendants' 12(c) Motion for Judgment on the Pleadings as to Counts I and II.

Plaintiffs' claims for trademark infringement and unfair competition require proof that: (1) the marks are valid and legally protectable; (2) Plaintiffs own the marks; and (3) Defendants' use of the mark to identify its goods and services is likely to create confusion concerning the origin of those goods or services. *Com. Nat. Ins. Servs., Inc. v. Com. Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir. 2000) (citing *Opticians Ass'n of Am.*, 920 F.2d at 192). "Federal registration of a trademark is prima facie evidence of the mark's validity, the registrant's ownership, and its exclusive right to use the mark in commerce." *Lucent Info. Mgmt., Inc. v. Lucent Tech., Inc.*, 186 F.3d 311, 315 (3d Cir. 1999).

However, for an unregistered mark, a plaintiff must prove its validity and ownership. *MNI*

*Mgmt., Inc. v. Wine King, LLC*, 542 F. Supp. 2d 389, 404-05 (D.N.J. 2008). An unregistered mark is valid and legally protectable where the mark is "inherently distinctive or has secondary meaning." *Id.* at 404 (citing *Duffy v. Charles Schwab & Co., Inc.*, 97 F. Supp. 2d 592, 598 (D.N.J. 2000). The most distinctive classification of a mark is "arbitrary or fanciful," which neither describe nor suggest anything about the product, and is entitled to the highest level of protection. *Id.* A mark has secondary meaning where a plaintiff demonstrates consumer recognition of the mark as the source of a service or product. *Id.* at 405.

Further, in determining whether a plaintiff owns an unregistered mark, courts must examine two factors: (1) priority of use; and (2) market penetration. *Telebrands Corp. v. Newmetro Design, LLC*, Civ. A. No. 16-1981, 2016 WL 8999923, at *13 (D.N.J. Nov. 10, 2016) (citing *MNI Mgmt.,* 542 F. Supp. 2d at 405). The first party to adopt a mark can assert ownership and demonstrate priority of use so long as the mark is continuously used in commerce. *Id.* (citing *Com. Nat. Ins. Servs.*, 214 F.3d at 438). Further, a plaintiff demonstrates market penetration by: "(1) volume of sales; (2) positive and negative growth trends in the area; (3) the number of actual customers in relation to the potential number of customers; and (4) the amount of advertising in the area." *Id.* This four-part test shows entitlement to protection of a trademark in a particular market. *Id.*

Plaintiffs claim to be the owners of U.S. Trademark Registration Number 4473453 for the SWISSARABIAN mark and attach a copy of the Registration to their Amended Complaint. (ECF No. 7 at ¶ 5; *see id.* at Ex. A.) In viewing Plaintiffs' allegations in the light most favorable to Plaintiffs, *Rosenau*, 539 F.3d at 221, their ownership and validity of the SWISSARABIAN mark is presumed, *Lucent*, 186 F.3d at 315. Further, in Plaintiffs' Amended Complaint, Plaintiffs allege they own the thirteen common law marks set forth therein. (ECF No. 7 at ¶ 16.) Specifically, they

assert Defendants filed multiple trademark applications for trademarks owned and/or confusingly similar to those owned by Plaintiffs, which have been "long used" by Plaintiffs in connection with their goods and services, and with knowledge that Defendants had no rights to the marks. (ECF No. 7 at ¶¶ 16-20.) They further assert, relevant to the common law trademarks' validity and protectability, that through the marks' "extensive and continuous use," the marks have become an indicator of the origin and quality of Plaintiffs' products. (*Id.* at ¶¶ 72, 78.) At this early stage in litigation, Plaintiffs' allegations are sufficient to overcome Defendants' Motion for Judgment on the Pleadings as to Defendants' ownership and validity challenge under Counts I and II.[5] *See E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 192 (3d Cir. 2008) (identifying the validity analysis as a "question of fact"); *Internet Prods. LLC v. LLJ Enterprises, Inc.*, 2020 WL 6883430, at *6 (D.N.J. Nov. 24, 2020) ("[B]ecause the issue of [secondary meaning] is a fact question, the Court refrains from determining this issue on a motion to dismiss.").

## ii.     *Likelihood of Confusion*

Defendants argue neither the common law marks, nor their use of the SWISSARABIAN mark, is likely to cause consumer confusion, and therefore, Plaintiffs' claims for trademark infringement and unfair competition (Counts I-VI) cannot proceed. (ECF No. 15-1 at 9-14.) As to the common law marks, Defendants argue Plaintiffs failed to plead any facts about what products may be confused with Plaintiffs' products or any instances of confusion. (*Id.* at 11-12.) Regarding the SWISSARABIAN mark, Defendants argue that, because any products Defendants sold bearing the SWISSARABIAN mark are SWISSARABIAN products, there cannot be a likelihood of

---

[5] The Court similarly rejects Defendants' request to dismiss Counts II through VI for lack of standing, specifically as to the common law "Intense Oud" trademark, upon consideration of the facial factual allegations of the Complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

confusion of origin. (*Id.* at 12-13.) Plaintiffs counter that they have sufficiently pled a likelihood of consumer confusion as to both their common law and registered marks at this stage of litigation. (ECF No. 18 at 19-20.) The Court agrees with Plaintiffs.

In addition to demonstrating ownership and validity, a plaintiff must further demonstrate that a defendant's use of the mark to identify goods or services is likely to cause consumer confusion over the origin of those goods or services. *MNI Mgmt., Inc.*, 542 F. Supp. 2d at 407-08 (citation omitted). However, generally, a plaintiff is not required to prove the likelihood of confusion at the pleading stage. *See Cambridge Pavers, Inc. v. EP Henry Corp.*, 407 F. Supp. 3d 503, 509 (D.N.J. 2019) ("[T]he plaintiff is not required to prove the likelihood of confusion at the pleading stage."); *Interlink Prods. Int., Inc. v. F & W Trading LLC*, Civ. A. No. 15-1340, 2016 WL 1260713, at *10 (D.N.J. Mar. 31, 2016); *Lorillard Tech., Inc. v. NJ Ale House, LLC*, Civ. A. No. 14-2044, 2015 WL 1197531, at *9 (D.N.J. Mar. 13, 2015) ("Whether, in fact, there is a likelihood of confusion between [the marks] is a fact-laden inquiry that is more appropriately undertaken at the summary judgment stage."). Here, Plaintiffs have alleged Defendants' use of their SWISSARABIAN and common law marks may cause consumer confusion with enough sufficiency to defeat Defendants' Motion for Judgment on the Pleadings as to Counts I and II.

       b. <u>Federal Common Law (Counts III and IV)</u>

Defendants argue Plaintiffs' claims for Federal Common Law Trademark Infringement and Unfair Competition should be dismissed because no such causes of action exist. The Court agrees. *See Int'l Order of Job's Daughters v. Lindeburg and Co.*, 633 F.2d 912, 915 (9th Cir. 1980) ("The parties have apparently assumed the existence of a general common law governing all trademark infringement cases brought in federal court. This assumption is incorrect[,] . . . there is no federal common law."); *see also Rupp v. Courier-Journal, Inc.*, 839 F. App'x 1003, 1007 n.2 (6th Cir.

2021) (internal quotations and citations omitted) ("[S]ince there is no federal common law governing trademark infringement actions, [plaintiff's] common law claims stem from state law."). Accordingly, Counts III and IV of Plaintiff's Amended Complaint are dismissed with prejudice.[6]

### c. New Jersey Statutory and Common Law (Counts V and VI)

Plaintiffs' claims under New Jersey Common Law Trademark Infringement (Count V) and Statutory Unfair Competition (Count VI) survive, despite Defendants' arguments to the contrary. (ECF No. 15-1 at 14-15.) Defendants submit that Plaintiffs' state law claims should be dismissed for the same reasons their Lanham Act claims should be dismissed. (*Id.*) Plaintiffs, and the Court, disagree with Defendants' position. Because the elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under New Jersey statutory and common law," the Court applies the same analysis. *J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002); *Buying for the Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 317 (D.N.J. 2006); *JUUL Labs, Inc. v. Zoey Trading LLC*, Civ. A. No. 21-19299, 2022 WL 970412, *4 (D.N.J. Mar. 31, 2022). For the same reasons set forth above, Defendants' Motion for Judgment on the Pleadings as to Counts V and VI are denied.

### 2. Tortious Interference with Contract (Count VII)

Defendants submit the Court should dismiss Plaintiff's cause of action for tortious interference with contract because Plaintiffs fail to allege Defendants caused a third-party to breach any contract with Plaintiffs or that Plaintiffs suffered any damages. (ECF No. 15-1 at 16.) They

---

[6] In Plaintiffs' Opposition to Defendants Cross-Motion for Judgment on the Pleadings, they submit that they "sufficiently pled Counts I, II, V, VI and VIII" and seek to amend as to Count VII. Plaintiffs do not challenge that their Complaint fails to state a cause of action as to Counts III and IV.

15

further argue any amendment of the Amended Complaint should be denied as futile. (*Id.* at 18-19.) In response, Plaintiffs seek leave to amend their Amended Complaint to add factual allegations regarding their contractual relationship with third-party, Intense Oud. (ECF No. 18 at 22-23.)

In light of Plaintiffs' request for leave to amend as to Count VII of the Amended Complaint, the Court denies Defendants' Motion for Judgment on the Pleadings at this time, with an opportunity to refile upon the filing of Plaintiffs' amended pleading. The Court finds that such an amendment of Plaintiffs' Amended Complaint would not be futile and could cure the deficiency alleged. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

### 3. Tortious Interference with Prospective Economic Advantage (Count VIII)

Defendants argue Plaintiffs failed to state a claim for tortious interference with prospective economic advantage because the allegations are too tenuous, indirect, and lacking in factual support, in that Plaintiffs fail to allege an interference with its economic expectations, or that Plaintiffs suffered damages as a result. (ECF No. 15-1 at 17.) Plaintiff disagrees and claims they pled sufficient facts to meet all four elements of the cause of action. (ECF No. 18. at 21-22.) The Court agrees with Plaintiffs.

To state a claim for tortious interference with prospective economic advantage, a plaintiff must demonstrate: "(1) a reasonable expectation of economic advantage; (2) interference done intentionally and with malice; (3) injury, in the sense of the loss of prospective gain; and (4) damages." *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 358 (D.N.J. 2019) (internal quotation marks omitted) (citing *MacDougall v. Weichert*, 677 A.2d 162, 174 (1996)). To overcome a motion to dismiss, or a motion for judgment on the pleadings, "there must be allegations of fact giving rise to some reasonable expectation of economic advantage." *Id.* (quoting *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (1989)).

Plaintiffs' factual allegations in their Amended Complaint are sufficient to overcome Defendants' motion. Plaintiffs' Amended Complaint identifies a business relationship with a third-party, Intense Oud, to distribute Plaintiffs' products in the United States. (ECF No. 7 at ¶ 99.) While Plaintiffs allege attempts by Defendants to interfere in their relationship with Intense Oud (*id.* at ¶¶ 100-02), they also allege Defendants interfered with Intense Oud's Amazon listings of Plaintiffs' products and the distributor's opportunity to sell the products on various social media platforms. (*Id.* at 107.) The allegations in Plaintiffs' Amended Complaint sufficiently plead that Defendants interfered with a reasonable expectation of economic advantage. Accordingly, Defendants' Motion as to Count VIII is denied.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Preliminary Injunction is **DENIED**. Further, Defendants' Motion for Judgment on the Pleadings is **DENIED** as to Counts I, II, V, VI, VII, and VIII and **GRANTED** as to Counts III and IV.[7] An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  December 13, 2022

---

[7] Defendants do not challenge the sufficiency of Plaintiffs' Unjust Enrichment claim (Count IX), and as such, the Court makes no findings as to the same.